521 A.2d 33

**Allen L. FEINGOLD, Appellant,**

**v.**

**Louis G. HILL & Ganesh Bala, Joseph M. Hankins & Duane, Morris & Heckscher.**

Superior Court of Pennsylvania.

Argued Oct. 16, 1986.

Filed Feb. 11, 1987.

540

Allen L. Feingold, Philadelphia, in propria persona.
David R. Weyl, Ambler, for Hill, appellees.

Stephen M. Feldman, Philadelphia, for Hankins, appellees.

Before CAVANAUGH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This appeal arises from the granting of preliminary objections to a civil complaint. The trial court ordered that appellant's complaint be dismissed with prejudice for failure to state a cause of action. Appellant, Allen L. Feingold, contends that the trial judge erred when he: (1) dismissed the complaint, as the complaint stated a cause of action pursuant to a number of intentional torts; (2) refused appellant's request for leave to amend the complaint; and (3) refused to recuse himself from the case. Finding appellant's arguments to be without merit, we now affirm.

Appellant is an attorney who has been practicing law for approximately twenty years, and continues to so practice in Philadelphia. This action seems to have arisen from a series of encounters with other members of the legal community: namely, the appellees in this matter, who are: (1) the Honorable Louis G. Hill, a trial judge in the Philadelphia Court of Common Pleas; (2) Ganesh Bala, Esquire, Judge Hill's law clerk; (3) Joseph M. Hankins, Esquire, an attorney practicing in the Philadelphia area; and (4) Duane, Morris & Heckscher, the law firm with which Mr. Hankins practices. Appellant has brought the current suit as the result of three separate lawsuits in which appellant's cause came before Judge Hill.

In the first case, *Markey v. Marino*, Philadelphia County, November Term, 1981, Number 212, Judge Hill entered a series of orders which were unfavorable to Mr. Feingold and his client, Markey, pursuant to various motions filed by appellee Hankins in his representation of Marino.

Initially, Mr. Hankins filed a motion for sanctions for failure to answer interrogatories, as well as a separate motion to compel the production of records. Both motions

were granted, and counsel fees totalling three hundred dollars ($300.00) were imposed against Mr. Feingold's client. Mr. Feingold filed two separate petitions for reconsideration, which Judge Hill denied. Mr. Feingold then filed for permission to appeal the discovery orders to the Superior Court; Judge Hill denied that petition as well.

In the months to follow, Mr. Feingold persisted in obstructive behavior which included: (1) the failure to pay the above counsel fees; (2) the retaliatory filing of two frivolous discovery motions, both of which were denied by Judge Hill; and (3) the failure to post security, pursuant to Pennsylvania Rules of Appellate Procedure 1731 and 1735, in a timely fashion, when another appeal to the Superior Court was filed. As a result of the above behavior, an additional six hundred dollars ($600.00) in counsel fees, as well as a fine of two hundred fifty dollars ($250.00), were imposed by Judge Hill, pursuant to Mr. Hankins' request for further sanctions in two separate hearings.

In the second case, *Feingold v. Skipwith*, 11 Philadelphia Rep. 20 (1984), Mr. Feingold filed four petitions demanding the permanent recusal of the Honorable Alfred DiBona of the Philadelphia Court of Common Pleas, from hearing civil motions [1] involving either Mr. Feingold or his clients. In support of his petitions, Mr. Feingold cited fifty-one (51) cases in which Mr. Feingold either acted as counsel, or was a party himself, all of which were decided unfavorably to Mr. Feingold at some pre-trial stage by Judge DiBona.

The matter was assigned to Judge Hill for disposition. A hearing was conducted on February 14, 1984. On June 12, 1984, Judge Hill issued a thirty-five (35) page opinion, with an eleven (11) page appendix, thoroughly and conscientiously analyzing all 51 cases cited by Mr. Feingold. Judge Hill failed to find any prejudice on the part of Judge DiBona, and dismissed Mr. Feingold's petitions.

Mr. Feingold responded by filing a petition for the recusal of Judge Hill in a third case, *Tareen v. Cohen*, which had

1. Judge DiBona is one of two civil motions judges in the Philadelphia Court of Common Pleas.

been assigned to Judge Hill for trial. The petition alleged that the sanctions imposed in the *Markey* case, and the opinion in the *Skipwith* matter, demonstrated that Judge Hill was unduly prejudiced in matters involving Mr. Feingold. Judge Hill refused to recuse himself, and the instant action was filed, along with a writ of prohibition to the Superior Court, further demanding Judge Hill's recusal in *Tareen* in light of the instant suit's likelihood of prejudicing Judge Hill against him. The writ was later withdrawn, but the instant action was maintained.

Following the filing of the instant complaint, preliminary objections were filed by all named defendants. Mr. Feingold then filed a petition, which requested that the motion be transferred to a non-Philadelphia judge for disposition, and the Honorable Melvin G. Levy of the Delaware County Court of Common Pleas was appointed by Chief Justice Nix to hear the motion. Argument upon the preliminary objections was scheduled to be heard before Judge Levy and the Honorable Joseph T. Labrum on October 15, 1985. Mr. Feingold requested a continuance of the argument, alleging a previous commitment in the Delaware County Courthouse. Judge Levy denied the request for continuance. When Mr. Feingold appeared at the October 15 argument, he presented an oral motion for the recusal [2] of Judge Levy for undue prejudice. In support of his motion, Mr. Feingold cited the denial of the request for continuance of argument, as well as an incident in an unrelated lawsuit which had occurred fourteen months (14) prior, in which Judge Levy had held Mr. Feingold in contempt. Judge Levy refused to recuse himself. Argument upon the preliminary objections then proceeded before Judges Levy and Labrum. By order dated October 16, 1985, Judge Levy sustained the preliminary objections, and dismissed the complaint, with prejudice. This timely appeal followed.

**2.** Mr. Feingold also filed a written motion for recusal, but did not file it until the morning of the argument on the preliminary objections. As such, copies had not been received by either Judge Levy or opposing counsel, and opposing counsel had not been given the opportunity to file a written answer to the motion at the time of argument.

The first issue raised concerns the dismissal of the complaint with prejudice for failure to state a cause of action. The complaint alleges that a number of intentional torts were committed against appellant by the various appellees during the course of events related above. Appellant contends that the factual averments of the complaint were sufficient to state a cause of action pursuant to the various alleged torts, and that the complaint, as such, should not have been dismissed. We disagree, and our reasoning is twofold.

Initially, with respect to two of the appellees, Judge Hill and his law clerk, Ganesh Bala, it is our holding that both men are immune from the current lawsuit pursuant to the doctrine of judicial immunity.

■ With respect to Judge Hill, the law in Pennsylvania is well established that judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over the subject matter and person. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978), reh. denied., 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978); *Praisner v. Stockner*, 313 Pa.Super. 332, 344, 459 A.2d 1255, 1261 (1983). This protection is not of recent origin, but has been extended to judicial officers in Pennsylvania since the 1800's. See *Hanna v. Slevin*, 8 Pa.Super. 509, 510 (1898). The rationale in support of this protection is obvious: if magistrates are to be free to exercise their discretion and apply their understanding of the law to the facts before them, they must be granted such a measure of independence that they are not compelled to respond in damages for mistakes honestly made, provided they have not acted beyond the pale of their authority. See *Petition of Dwyer*, 486 Pa. 585, 591, 406 A.2d 1355, 1358 (1979); see also *McNair's Petition*, 324 Pa. 48, 55–56, 187 A. 498, 502 (1936), quoting *Commonwealth v. Cauffiel*, 79 Pa.Super. 596, 600–601 (1922).

■ Clearly, from the factual background given above, the matters which were brought by appellant before Judge Hill were within the jurisdiction of the Philadelphia Court of Common Pleas, and appellant's arguments do not allege otherwise. As such, we only need to consider appellant's allegations that Judge Hill's actions exceeded the boundaries of his judicial authority.

In support of this allegation, the complaint makes repeated references to Judge Hill's animosity and prejudice towards appellant, and cites, as factual demonstration, Judge Hill's unfavorable rulings and imposition of sanctions and fines. These actions were clearly within the scope of Judge Hill's authority; furthermore, as stated previously, malice does not, in and of itself, make judicial behavior actionable. *Stump*, supra; *Praisner*, supra.

In fact, the only allegations of the complaint which would take Judge Hill's actions beyond the realm of his authority, if true, relate to his alleged conspiracy with his law clerk to prevent appellant from representing his clients and practicing law in the Commonwealth of Pennsylvania. His only factual support for this allegation, however, is in the form of an exhibit attached to the complaint, consisting of a series of letters and one memorandum, relating to the *Tareen* case. Apparently, the matter was continued by Judge Hill, despite appellant's erroneous understanding that the matter was specially listed. Judge Hill's law clerk, Mr. Bala, upon hearing that appellant had phoned, returned the call, and attempted to explain the reasons for the continuance. Appellant responded angrily that he had been entitled to earlier notice, and, in followup, wrote a letter of complaint to the President Judge, Edward J. Bradley. Judge Hill sent a reply letter to President Judge Bradley, explaining his position. A review of this exhibit, and the events related therein, do not reveal any action going beyond the normal course of court business, much less action rising to the level of a conspiracy.

As such, appellant has failed to plead any facts which would remove Judge Hill's cloak of judicial immunity.

■ With respect to Mr. Bala, Judge Hill's law clerk, there is no case law in Pennsylvania that directly addresses whether a law clerk receives the benefit of his employer's judicial immunity. However, law clerks are appointed by judges, within the scope of their constitutional authority, as necessary attendants to the court, to assist judges in the performance of their judicial functions. See 42 Pa.C.S.A. § 2301(a)(1); also see *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 462–463, 322 A.2d 362, 365 (1974). As such, it is appropriate to consider whether law clerks, as court-appointed officials, should enjoy some form of quasi-judicial immunity.

In the past, quasi-judicial immunity has been extended to magistrates, see *McNair's Petition*, supra; officials of state agencies, see *Dwyer*, supra; and district justices, see *Praisner*, supra. The rationale that has been consistently applied for the extension of such immunity has been stated as thus:

If a judge of an inferior jurisdiction has the power under authority of law to hear and pass on cases, to which the particular offense belongs, the same reason requires that he should be protected from liability for erroneous action, which exempts judges of superior or general jurisdiction from such liability. *If judges properly expected to be most learned in the law can plead official exemption for their blunderings in the law, a fortiori those from whom less is to be expected should not be compelled to respond in damages for their mistakes honestly made.*

*Praisner*, supra. (Emphasis supplied).

The same reasoning would appear applicable to law clerks as well. Indeed, law clerks, while trained in the law, are not judges, and less is expected from them than their employers. As such, to permit the imposition of civil liability upon law clerks who are merely performing their appointed tasks, while insulating magistrates and district justices, would be incomprehensible, and unduly harsh.

As a further consideration, the law is generally averse to that which interferes in the lawful exercise by judges of

their supervisory powers over their appointed employees. See, for example, *Eshelman v. Commissioners of County of Berks*, 62 Pa.Cmwlth. 310, 436 A.2d 710, 713 (1981) (held award entered in arbitration which interfered with judicial discretion over hiring, supervision, and discharge of court-appointed employees invalid). This is in keeping with the policy of insuring an independent judiciary. *Dwyer*, supra.

It is axiomatic that law clerks are supervised by their employers in the performance of their duties. If the courts of this Commonwealth were to permit law clerks to be subject to liability for duties honestly performed pursuant to such supervision, we would be permitting an indirect, yet very real, interference in the exercise of discretion by their employers. The cloak of quasijudicial immunity must be extended to law clerks in the performance of their official duties if we are not to entirely emasculate the independence of the judiciary itself.

■ In light of this holding, we must now examine the allegations against Mr. Bala. As stated previously, Mr. Bala is alleged to have conspired with Judge Hill to prevent appellant's exercise of his right to practice law. Again, the only factual support for this allegation relates to the *Tareen* continuance, in which Mr. Bala did no more than return appellant's phone call, and report the substance of that phone call, through a memorandum, to Judge Hill. Clearly such activity would have fallen within the parameters of Mr. Bala's duties. As such, Mr. Bala is immune from suit in the instant matter under the protection of quasi-judicial immunity.

■ Were we to find judicial immunity inapplicable in this case, however, we would nonetheless be compelled to uphold the dismissal of the complaint against Judge Hill and Mr. Bala for the same reason we uphold the dismissal with respect to Mr. Hankin and his law firm—the complaint, simply put, is premised upon a series of legal conclusions, yet is devoid of the slightest factual support for these conclusions.

To be sure, the complaint alleges that a variety of intentional torts were committed by appellees, individually and in concert, against appellant, including fraud, deceit, conspiracy, intentional infliction of emotional distress, interference with a business relationship, and defamation. However, a review of the complaint reveals that the only factual details given by appellant to support his allegations are in the form of a rambling recitation of the background to the *Markey*, *Skipwith*, and *Tareen* matters, accompanied by repeated assertions that the unfavorable outcomes appellant suffered in each instance were the result of unfair treatment and malicious intent on the part of the various appellees. Furthermore, appellant's brief on appeal, while accurately setting forth the prima facie elements which comprise each of the alleged intentional torts, does not cite any factual examples from the complaint to demonstrate how the prima facie elements of these torts were pled with any specificity.

■ Blind suspicions and unsupported accusations simply do not state a cause of action pursuant to any theory of tort recovery. Even our present liberalized system of pleading requires that the material facts upon which a cause of action is premised be pled with sufficient specificity so as to set forth the prima facie elements of the tort or torts alleged. *Baker v. Rangos*, 229 Pa.Super. 333, 347–348, 324 A.2d 498, 505 (1974); Pa.R.C.P. 1019(a). Appellant has failed to call to this Court's attention any factual averments which may have been overlooked by the trial judge in his assessment of the complaint as legally insufficient. As such, we see no reason to disturb the trial court's finding on this issue.

Appellant's second contention on appeal is, in effect, an argument in the alternative. Appellant contends that the complaint, if legally insufficient, should not have been dismissed with prejudice before granting appellant at least one opportunity to amend. We disagree.

■ The right to amend should be liberally granted, absent an error of law or resulting prejudice to an adverse party. *Connor v. Allegheny General Hospital*, 501 Pa.

306, 311, 461 A.2d 600, 602 (1983); Pa.R.C.P. 1033. However, the right to amend is not absolute. Where the initial pleading reveals that the complaint's defects are so substantial that amendment is not likely to cure them, and that the prima facie elements of the claim or claims asserted will not be established, the right to amend is properly withheld. See *Spain v. Vicente*, 315 Pa.Super. 135, 142–143, 461 A.2d 833, 837 (1983); also see *Behrend v. Yellow Cab Company*, 441 Pa. 105, 110–111, 271 A.2d 241, 243 (1970). Furthermore, the decision to grant or deny leave to amend is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion. *Junk v. East End Fire Dep't*, 262 Pa.Super. 473, 490, 396 A.2d 1269, 1277 (1978).

The instant complaint consists of fifty-two (52) paragraphs, divided into two counts, and ten (10) exhibits. In its entirety, the complaint approaches three hundred fifty (350) pages in length. As stated previously, however, this 350-page document merely reports the series of events from the *Markey, Skipwith,* and *Tareen* matters, and alleges various intentional torts sheerly upon the bases of supposed hostility held by appellees toward appellant, and appellant's losses in each case. Furthermore, appellant's brief fails to set forth any additional facts which would support a cause of action pursuant to the various torts.

Appellant, as we have noted, is a practitioner with twenty years of trial experience. Yet, despite this voluminous pleading, he has failed to state a cause of action, and has not demonstrated, through his brief, an ability to cure this deficiency. As such, we are compelled to reach but one conclusion: this pleading was appellant's best effort, and granting him an opportunity to amend would have been fruitless. Hence, we cannot find that the trial court abused its discretion in denying appellant leave to amend, and we uphold its decision to dismiss the complaint with prejudice.

The final issue raised on appeal concerns the trial judge's refusal to recuse himself from hearing oral argument on the preliminary objections. Appellant contends that the

petition for recusal filed the morning of October 15, 1985, immediately prior to oral argument, contained sufficient evidence of undue prejudice on the part of Judge Levy to compel his recusal. Once again, we find appellant's contention lacking in merit.

■ Initially, we note that appellant would appear to have waived this issue for purposes of appeal.

As a starting point, the notice of appeal as filed indicates that the only order from which appellant is taking an appeal, is the order of October *16,* 1985, granting appellees' preliminary objections and dismissing the complaint. Appellant's motion for recusal was denied orally in open court on October *15.* More than thirty days have passed since that denial. As such, the time for taking an appeal has passed. Pa.R.A.P. 903(a). Furthermore, the docket entries do not indicate that the October 15 order was ever reduced to writing. An oral order of court is not appealable until it has been reduced to judgment and docketed by praecipe of a party. Pa.R.A.P. 301(c), (d). As this was never done, appellant has failed to take the appropriate procedural action to make the recusal order appealable.

■ However, setting aside the procedural problems this issue of recusal presents, we would be inclined to uphold the trial court's decision on the merits anyway. A party petitioning for disqualification of a trial judge bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Hall v. Hall,* 333 Pa.Super. 483, 487, 482 A.2d 974, 976 (1984); *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976). Should the trial court find that the party seeking recusal has not met this burden, denial of the recusal motion is appropriate, and will not be reversed absent a clear abuse of discretion. *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 220, 489 A.2d 1291, 1299 (1985). Appellant's sole factual support for his allegations of prejudice relate to the trial judge's denial of appellant's motion to continue the October 15 argument, and a contempt citation issued in a previous unrelated matter. As with appellant's allegations against Judge Hill, these allega-

tions are mere recitations of unfavorable rulings against appellant, and clearly fail to satisfy the necessary burden.

Order affirmed.